UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUANITA MARIA OLIVER,

       Plaintiff,

v.                           Case No. 8:12-cv-2117-T-33TBM

TECO ENERGY, INC.,

       Defendant.

_____/

**ORDER**

Defendant TECO Energy, Inc.'s Motion for Summary Judgment (Doc. # 24), filed on August 26, 2013, is before the Court.[1] Plaintiff Juanita Maria Oliver filed a Response in Opposition to the Motion for Summary Judgment (Doc. # 40) on September 12, 2013, and TECO filed a Reply (Doc. # 42) on September 30, 2013. For the reasons that follow, the Court grants the Motion for Summary Judgment.

**I.   Background**

    **A.   Oliver's Duties at TECO**

Oliver worked for TECO in various customer service representative positions from October of 2004, until she was terminated in July of 2010. (Doc. # 2 at ¶ 4). She began her

_____

[1]Defendant indicates that it is "Tampa Electric Company," not "TECO Energy, Inc." and that "Plaintiff was at no time an employee of TECO Energy." (Doc. # 24 at 1, n.1). The Court conforms the pleadings to the evidence and substitutes Tampa Electric Company as the Defendant. Just as Defendant has done in its submissions, the Court shall refer to Tampa Electric Company as "TECO" herein.

career with TECO as a Customer Sales Professional and was promoted to Lead I on July 29, 2009. (Sugden Decl. Doc. # 36 at ¶ 8).  In both positions, she was responsible for answering telephone calls from internal and external customers. (Id. at ¶ 3).  Oliver was required to perform research of customer records and utilize appropriate systems and resources to respond effectively to customer inquires.  (Doc. # 36-1). Part of Oliver's job description required that she "have a strong customer service aptitude, the ability to stay calm, level-headed and resilient, and have the ability to convey empathy as well as professionalism." (Id.).

**B.   First Referral to EAP**

During the course of her employment, Oliver was referred to TECO's Employee Assistance Program on a number of occasions.  Her first referral to the EAP was in February of 2008.  At that time, Oliver informed one of her supervisors, Matthew Coleman, that co-worker Denise Bernal was giving her "dirty looks," and had bumped into her in the hallway. (Coleman Decl. Doc. # 28 at ¶ 3).[2] TECO investigated Oliver's complaints by talking to Oliver, Bernal, Coleman, and Tina

---

[2] Oliver has also alleged that Bernal hit and kicked her on multiple occasions. (Oliver Dep. Vol. 2 Doc. # 26 at 59; Wood Decl. Doc. # 38 at ¶ 3).

Findley (Bernal's supervisor). (<u>Id.</u> at ¶ 4).   TECO determined that Oliver's accusations against Bernal were untrue but nonetheless advised Bernal to treat Oliver with cordiality. (Findley Decl. Doc. # 29 at ¶ 4). Coleman advised Oliver that TECO had resolved the situation. (Coleman Decl. Doc. # 28 at ¶ 4). Oliver was not satisfied with TECO's resolution and refused to return to work.  (Findley Decl. Doc. # 29 at ¶ 5). At that point, Raven Woodard, TECO's Human Resources Manager, referred Oliver to TECO's Employee Assistance Program provider, Dr. Gary Wood. (Woodward Decl. Doc. # 39 at ¶ 3). On February 20, 2008, Dr. Wood noted that testing revealed a psychiatric symptomatology suggestive of a mood disorder and paranoia. (Doc. # 38-1).  Oliver was also treated by Dr. Bala K. Rao, who "found that Oliver was hypomanic." (Rao Decl. Doc. # 35 at ¶ 3). Dr. Wood cleared Oliver to return to work on March 17, 2008. (Wood Decl. Doc. # 38 at ¶¶ 5). Neither Dr. Wood nor Dr. Rao shared Oliver's confidential medical information with TECO. (<u>Id.</u> at ¶ 20; Rao Decl. Doc. # 35 at ¶ 9).

### C.  <u>Second Referral to EAP</u>

On October 21, 2008, Oliver was again referred to the Employee Assistance Program.  This time, Oliver indicated to her co-worker Wayne Guthrie that the sight of Denise Bernal

made Oliver want to stab her. (Guthrie Decl. Doc. # 31 at ¶ 3).  Guthrie reported this threat to his supervisor, Tina Mary, as well as to TECO's Human Resources department. (<u>Id.</u>). TECO asked Oliver if she ever threatened another employee and she responded that she threatened to stab other employees on multiple occasions. (Oliver Dep. Vol. 1 Doc. # 26 at 66-67). With this, TECO required Oliver to once again participate in its Employee Assistance Program with Dr. Wood. (Coleman Decl. Doc. # 28 at ¶ 6).  Oliver was also treated by Dr. Rao. (Rao Decl. Doc. # 35 at ¶ 4).  Oliver was cleared to return to work on November 10, 2008. (Doc. # 38-1).

    **D.**   **<u>Third Referral to EAP</u>**

On December 8, 2008, TECO directed Oliver to see Dr. Wood again in connection with the Employee Assistance Program because Oliver made further accusations that Bernal was stalking her, which TECO determined were unfounded. (Wood Decl. Doc. # 38 at ¶ 10).  Dr. Wood performed an assessment and later authorized Oliver to return to work.

    **E.**   **<u>Fourth Referral to EAP and Positive Discipline</u>**

On July 29, 2009, Oliver was promoted to Lead I. However, reports of and complaints about Oliver's unusual workplace behavior continued.  On August 17, 2009, October 2, 2009, and October 9, 2009, Sugden received complaints about Oliver's

4

rude and disrespectful attitude toward fellow TECO employees. (Sugden Decl. Doc. # 36 at ¶¶ 9, 11, 13).   In addition on September 24, 2009, Sugden received a customer complaint regarding Oliver. (Id. at ¶ 10).   Oliver received feedback from Sugden and Tina Mary regarding her tone, word choice, and handling of the customer call, which Oliver rejected all the while maintaining that she addressed the customer call appropriately. (Id.; Doc. # 36-5).

Thereafter, on October 8, 2009, Oliver caused a disruption at the call center when she refused to follow a TECO policy, stating "I have a problem doing it," and that she would follow her own judgment instead. (Sugden Decl. Doc. # 36 at ¶ 12; Doc. # 36-7).   On October 15, 2009, Oliver had an episode at her desk where she "slam[med] her fists on her desk, squeal[ed] and put her head down while beating on the desk." (Sugden Decl. Doc. # 36 at ¶ 14; Doc. # 36-9).   During the same incident, Oliver exclaimed: "I can't take these people anymore" and spoke to her supervisor "very nastily." (Id.).   On the same day, coworker India Banks reported a complaint to Sugden that Oliver was rude and disrespectful to her team members. (Sugden Decl. Doc. # 36 at ¶ 14; Doc. # 36-10).

Thereafter, on October 27, 2009, Oliver snatched a

sandwich from a coworker's hand, threw it on the ground, and then stomped away with her fists clenched. (Joselyn Nieves Decl. Doc. # 34 at ¶ 3; Doc. # 34-1; Sugden Decl. Doc. # 36 at ¶ 15). On the same day, three of Oliver's co-workers reported to Sugden that they were in fear of Oliver and "what she may do to herself and/or others." (Sugden Decl. Doc. # 36 at ¶ 15; Doc. # 36-11).[3]

These incidents and others culminated in Oliver being issued a "Written Reminder" and being mandated to the Employee Assistance Program. (Sugden Decl. Doc. # 36 at ¶ 19; Doc. # 36-14).[4]   Among other things, TECO's Written Reminder indicated:

> Maria, we have had recent discussions and have reviewed calls concerning complaints from internal and external customers that stated you [have] been rude to them. We have also discussed you disrupting other team members with your off target behaviors. . . . As a result of these off target behaviors, you are being placed on Positive Discipline-Written Reminder. This will be in effect for 180 days.

(Doc. # 36-14).

---

[3] On October 29, 2009, Oliver attended a training class entitled "Respect in the Workplace." (Sugden Decl. Doc. # 36 at ¶ 16).

[4] TECO has a Positive Discipline system in place for all of its employees to ensure fair treatment, and includes: Oral Reminder, Written Reminder, Decision Making Leave, and finally, Termination. (Sugden Decl. Doc. # 36 at ¶¶ 4-5).

On November 3, 2009, in connection with the EAP program, Dr. Wood informed TECO Employee Relations that he required Oliver to obtain a psychiatric re-evaluation and would notify TECO regarding when Oliver could return to work. (Wood Decl. Doc. # 38 at ¶¶ 12-19).  At Dr. Wood's direction, Dr. Rao performed Oliver's fitness for duty evaluation. (Id.; Rao Decl. Doc. # 35 at ¶ 5).   Dr. Rao's fitness for duty examination "diagnosed Oliver as Bipolar disorder, type I, recent episode hypomanic." (Rao Decl. Doc. # 35 at ¶ 5). On December 28, 2009, TECO was notified that Oliver was not yet released for return to work and was receiving treatment. (Wood Decl. Doc. # 38 at ¶¶ 12-19).  Oliver failed to follow through with the instructions of the doctors, which resulted in a delay in Oliver's return to work until March 23, 2010. (Id.).

**F.    <u>Further Discipline and Termination</u>**

In April of 2010, Oliver violated TECO's customer service procedures when she threatened a customer that she would turn off his lights if he did not pay his bill. (Sugden Decl. Doc. # 36 at ¶ 22). During the same call, she insinuated to the customer that he was committing theft of electricity and she hung up on him. (Id.). That customer complained that Oliver was rude and condescending. (Id.).

7

Thereafter, on April 28, 2010, Oliver exhibited bizarre behavior at a meet and greet for new TECO employees by, inter alia, standing face to face with another employee and exclaiming "Because I will get in your face, cause I'll get in your face." (Guthrie Decl. Doc. # 31 at ¶ 4). "The subject employee was startled, pushed back, and had a confused look. Other team members expressed shock regarding Oliver's behavior." (Id.).

As a result, on April 30, 2010, Oliver was placed on the next level of "Positive Discipline," which is "Decision Making Leave." (Sugden Decl. Doc. # 36 at ¶ 23). TECO's "Decision Making Leave-Commitment to Excellence, Standards of Integrity" memorandum explains that Oliver's behavior "violates our Standards of Integrity and this type of behavior will not be tolerated by the Company: You also did not follow proper customer service procedures which violates our core value of Customer Service." (Doc. # 36-19). The written memorandum also remarked that Oliver failed to respect others, warning: "Maria, your overall performance will be closely monitored during this one-year period from today's date. During this period, any infraction of this Decision Making Leave, company safe work practices, policies, work rules, operating

procedures and regulations may result in termination of your employment." (Id.).

Not long thereafter, on June 22, 2010, Oliver was directed by two members of TECO management to attend a meet and greet for new TECO customer service employees. (Sugden Decl. Doc. # 36 at ¶ 24; Gonzalez Decl. Doc. # 30 at ¶ 4). Oliver refused to attend. (Sugden Decl. Doc. # 36 at ¶ 24). Sugden then specifically mandated that Oliver attend. (Id.). Oliver again refused to attend the meet and greet. (Id.).

The next day, Oliver caused a workplace disruption when she screamed twice at her coworker Jennifer Weatherly.  (Id. at ¶ 25; Weatherly Decl. Doc. # 37 at ¶ 5).  This prompted Sugden to speak with human resources and TECO management. (Sugden Decl. Doc. # 36 at ¶ 26). After considering Oliver's actions, TECO terminated her employment as of July 29, 2010, on the basis of insubordination as Oliver failed to attend the June 22, 2010, meet and greet. (Id. at ¶¶ 26-27).

## II. <u>Charges of Discrimination/Retaliation and Complaint</u>

Oliver filed a Charge of Discrimination against TECO on November 13, 2009, alleging discrimination based on race and disability. (Doc. # 25-7). Therein, she asserted:

> I.   I was hired in October 2004, as a Customer
>      Service Representative.  I was promoted to my

9

current position of Lead I in or around July/August 2009.  On February 18, 2008, October 23, 2008, and November 3, 2009, I have been forced on a medical leave of absence.  It is a mandatory requirement that I continue to be treated by the employer's EAP doctor and take prescription medication to keep my position.

II.  Management used unsubstantiated gossip to justify placing me on the forced medical leave.  On February 18, 2008, I was told the medical leave was because I accused a female employee of assault.  The employer felt I had created this story.  On October 23, 2009, an unidentified person allegedly overheard me threatening to stab someone.  On November 3, 2009, I was told I was a danger as the reason for the leave, yet I was given no information as to how or why it was determined that I was a danger.

III. I believe that I am being discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.  I further believe that I am perceived as being disabled in violation of the Americans with Disabilities Act of 1990, as amended.

(Doc. # 25-7).[5]

Oliver's second Charge of Discrimination was filed on October 27, 2010, after her termination. (Doc. # 25-13).  She contends in her second Charge that TECO retaliated against her when it fired her after she filed her initial Charge on

_____

[5] Despite Oliver's reference to racial discrimination in her Charge of Discrimination, she has not sought relief in this action for racial discrimination.

November 13, 2009. (<u>Id.</u>).

On June 1, 2012, Oliver filed a four-count Complaint against TECO in state court alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 1981, and the Florida Civil Rights Act, Fla. Stat. § 760.11. (Doc. # 2). On September 20, 2013, TECO timely removed the case to this Court on the basis of federal question jurisdiction. (Doc. # 1). TECO filed its Answer (Doc. # 5) on September 27, 2013, and now seeks summary judgment on each of Oliver's claims.

## III. <u>Legal Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742

(11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference

from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## IV.  Disability Discrimination Analysis

### A.  Burden Shifting Framework

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "[D]isability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims," and therefore this Court will "consider both claims together." Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007). "Under the controlling law in this Circuit, the

burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims." Id. (internal citation omitted). "Under that framework the plaintiff must first establish a prima facie case of discrimination . . . . Once the plaintiff has made a prima facie case, a rebuttable presumption arises that the employer has acted illegally. The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action. If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).[6]

**B.    Prima Facie Disability Discrimination**

To establish a prima facie case of disability discrimination under the ADA and FCRA, Oliver must show that (1) she has a disability; (2) she is a qualified individual (meaning she could perform the essential functions of the job in question with or without reasonable accommodation); and (3)

---

[6]   The Court acknowledges that the McDonnell Douglas burden shifting test is not applicable to ADA failure to accommodate claims. Nadler v. Harvey, No. 06-12692, 2007 U.S. App. LEXIS 20272, at *28 (11th Cir. Aug. 24, 2007). Oliver has not asserted a failure to accommodate claim in this case.

14

TECO unlawfully discriminated against her because of her disability. Albright v. Columbia Cnty. Bd. of Educ., 135 F. App'x 344, 345 (11th Cir. 2005) (citing Rossbach v. City of Miami, 371 F.3d 1354, 1356-57 (11th Cir. 2004)).

An individual is disabled if (1) she has a physical or mental impairment that substantially limits a major life activity; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(1). A mental impairment is defined, in part, as "[a]ny mental or psychological disorder . . . and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2).

For the purposes of its Motion for Summary Judgment only, TECO concedes that Oliver has a disability because she has been diagnosed as having bi-polar disorder. See 29 C.F.R. § 1630.2(j)(3)(iii). Nevertheless, TECO asserts that Oliver cannot prove a prima facie case of disability discrimination because (1) she was not "otherwise qualified" under the ADA and (2) TECO did not discriminate against her on the basis of having a disability.

### 1.   Qualified Individual with a Disability

A qualified individual with a disability is someone "with a disability who satisfies the requisite skill, experience, education, and other job-related requirements of the

employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); Davis v. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000). The mandates of the ADA do not include the requirement that an employer retain an individual incapable of performing the essential functions of their position. Id.; Sutton v. Lader, 185 F.3d 1203, 1211 (11th Cir. 1999)("There is no obligation under the Act to employ people who are not capable of performing the duties of the employment to which they aspire.").

"'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform." Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). The employer's written job description is given consideration in determining what functions are deemed essential. Id. Here, Oliver's job description required that she "must have a strong customer service aptitude, the ability to stay calm, level-headed and resilient, and have the ability to convey empathy as well as professionalism." (Sugden Decl. Doc. # 36 at ¶ 3; Doc. # 36-1). As detailed herein, the record demonstrates that Oliver could not conform her behavior

to these requirements.[7]   Oliver consistently engaged in disruptive behavior, including banging her head on her desk, snatching a sandwich from her coworker's hand and throwing it on the ground, screaming, acting inappropriately at meetings, and engaging in other unprofessional conduct.   As explained in Owusu-Ansah v. Coca-Cola Co., 715 F.3d 1306, 1311 (11th Cir. 2013), "[A]n employee's ability to handle reasonably necessary stress and work reasonably well with others are essential functions of any position."   In addition, the "[a]bsence of such skills prevents the employee from being 'otherwise qualified.'" Williams v. Motorola, Inc., 303 F.3d 1284, 1290-91 (11th Cir. 2002).   Furthermore, "there is no requirement under the ADA that an employer tolerate unprofessional behavior for a certain period before it is entitled to discharge an employee." Foley v. Morgan Stanley Smith Barney, LLC, No. 11-cv-62476, 2013 U.S. Dist. LEXIS 28873, at *18 (S.D. Fla. Mar. 4, 2013); Weigert v. Georgetown Univ., 120 F. Supp. 2d 1, 14 (D.D.C. 2000)("technical skills and experience

---

[7] The Court rejects Oliver's argument that there is a factual issue for trial as to whether she is a qualified individual. Oliver has supplied the Court with statements from some of her former co-workers, such as Michelle Cooper, who praised Oliver's professionalism. (Doc. # 41). These statements have no bearing on the issue.   An employee's performance is judged by the employer, not by that employee's peers.

are not the only essential requirements of a job and stability and the ability to interact with co-workers constitutes an essential function.")

The record demonstrates that Oliver could not work reasonably well with others, which was an essential job requirement.   Oliver's disruptive, inappropriate, and unprofessional conduct continued unabated even after counseling, Positive Discipline, and additional training on professionalism.   As aptly stated by TECO, "Oliver is not otherwise qualified under the ADA because she could not work reasonably well with others and could not manage stress." (Doc. # 24 at 16).

Because Oliver is not an otherwise qualified individual with a disability, she fails to assert a prima facie case, and TECO is entitled to summary judgment on her ADA and FCRA disability discrimination claims.   Nevertheless, in an effort to fully resolve the pending claims and issues, the Court will continue to analyze Oliver's claims under the assumption that Oliver is a qualified individual with a disability.

### 2.   Evidence of Disability Discrimination

Oliver's five-page response to TECO's Motion for Summary Judgment does not identify with specificity which actions she contends constituted acts of ADA discrimination.   From the

18

Court's review of Oliver's submissions, it appears that Oliver argues that TECO violated the ADA when it referred her to its Employee Assistance Program and required her to take medical leaves of absence in connection with psychological examinations.  In addition, Oliver appears to assert that she was terminated due to her disability.

TECO contends that it cannot be found to have discriminated against Oliver on the basis of a disability because its decision makers did not know that Oliver had a disability.  However, since TECO routinely sent Oliver to its Employee Assistance Program and because Oliver filed a Charge of Discrimination against TECO alleging disability discrimination prior to her termination, the Court declines to credit TECO's contention that it was unaware of Oliver's psychological condition at the summary judgment stage.  Even so, Oliver fails to assert a prima facie case of disability discrimination because (1) TECO was entitled to  utilize its Employee Assistance Program in light of Oliver's behavior and (2) TECO was entitled to terminate Oliver based on her misconduct.

### i.   EAP and Medical Leaves of Absence

Under the ADA, "mental and physical examinations are allowable if the examination is used to determine whether the

'employee can perform job-related functions.'" <u>Roberts v. Rayonier, Inc.</u>, No. 3:03-cv-55, 2005 U.S. Dist. LEXIS 37714, at *6 (M.D. Fla. Dec. 21, 2005)(citing 42 U.S.C. § 12112(d)(4)(B)). "Where inquires into the psychiatric health of an employee are job related and reflect a concern with the safety of employees, the employer may, depending on the circumstances of the particular case, require specific medical information from the employee and may require that the employee undergo a physical examination designed to determine his ability to work." <u>Williams</u>, 303 F.3d at 1291.

Here, one of Oliver's coworkers reported to TECO's Human Resources department that Oliver stated that she wanted to "stab" another TECO employee.  As a company, TECO includes safety as one of its "core values" and maintains: "We emphasize a safe work environment and a culture of looking out for the safety and well-being of each other, our customers and our community.  We believe the safety of life outweighs all other considerations." (Doc. # 32-2).  With the safety of its employees to consider, TECO referred Oliver to its Employee Assistance Program.  Dr. Wood evaluated Oliver on a number of occasions and required her to undergo a psychiatric evaluation.  Oliver was not cleared to return to work until Dr. Wood and other medical professionals determined that she

20

would not pose a threat to others. "Generally, a doctor's refusal to release a person to return to work is a legitimate reason for an employer to prevent that person from returning to work." <u>Calvo v. Walgreens Corp.</u>, 340 F. App'x 618, 624 (11th Cir. 2009).

The court faced a similar factual situation in <u>Owusu-Ansah</u>. There, after a call center employee banged his head against the table in a meeting and declared that "someone was going to pay for this," the employer required the employee to undergo a psychiatric fitness for duty examination prior to returning to work. 715 F.3d at 1309. The employee completed the psychiatric evaluation and sued the employer for violation of § 12112(d)(4)(A) of the ADA. <u>Id.</u> at 1310. The Eleventh Circuit affirmed a summary judgment in favor of the employer and stated: "an employer can lawfully require a psychiatric/psychological fitness-for-duty evaluation under § 12112(d)(4)(A) if it has information suggesting that an employee is unstable and may pose a danger to others." <u>Id.</u> at 1312. Notably, in <u>Owusu-Ansah</u>, the employee's generalized threat was that "somebody" would "pay for this." In contrast, it was TECO's understanding that Oliver articulated a specific threat (to stab) an identifiable person (Denise Bernal). Under these circumstances, TECO had every right to refer

Oliver to its Employee Assistance Program and require a psychological examination.

### ii.  **Termination**

Oliver also contends that TECO unlawfully discriminated against her when it terminated her employment as of July 29, 2010.  Notably, TECO terminated Oliver for subordination after Oliver failed to attend a meeting.  Oliver does not dispute that she failed to attend the meeting in question.  She attempts to raise a genuine issue of material fact by pointing to her deposition testimony in which she states that she thought that she was excused from attending the meeting. Oliver's alleged confusion regarding her employer's requirements does not create a genuine dispute of fact for trial.  As correctly argued by TECO: "it is not the Plaintiff's belief [that controls], but whether the Defendant believed that the Plaintiff had engaged in the behavior for which it took action." (Doc. # 42 at 6).

There is no evidence that TECO terminated Oliver on the basis of a disability.  In fact, the record shows that, when faced with numerous instances of well-documented misconduct, TECO gave Oliver many chances to rehabilitate and conform her behavior to its communicated standards, applicable to all employees.  When TECO determined that Oliver could not meet

its requirements, it terminated her.   The Court finds
persuasive the following analysis offered by Judge Posner in
a case where a terminated employee suffered from a mental
illness and sought relief under the ADA:

> There is no evidence that Palmer was fired because
> of her mental illness.  She was fired because she
> threatened to kill another employee.  The cause of
> the threat was, we may assume, her mental illness.
> . . .  But if an employer fires an employee because
> of the new employee's unacceptable behavior, the
> fact that the behavior was precipitated by a mental
> illness does not present an issue under the
> Americans with Disabilities Act.

Palmer v. Circuit Court of Cook Cnty., 117 F.3d 351, 352 (7th
Cir. 1997).

Articulated differently: "the law is well settled that
the ADA is not violated when an employer discharges an
individual based upon the employee's misconduct, even if the
misconduct is related to a disability." Ray v. Kroger Co., 264
F. Supp. 2d 1221, 1228 (S.D. Ga. 2003). See also Jones v. Am.
Postal Workers Union, 192 F.3d 417, 429 (4th Cir.
1999)(employer not liable under the ADA for terminating
schizophrenic employee after that employee threatened a co-
worker); Hamilton v. S.W. Bell Tel. & Co., 136 F.3d 1047, 1052
(5th Cir. 1998)("An employee who is fired because of outbursts
at work directed at fellow employees has no ADA claim.").
Tellingly, the EEOC's "Primer on the ADA" as quoted in the

<u>Foley</u> case states that employers "do not have to excuse violations of conduct rules necessary for the operation of your business.  Example: You do not have to tolerate violence, threats of violence, theft or destruction of property, even if the employee claims that a disability caused the misconduct." <u>Foley</u>, 2013 U.S. Dist. LEXIS at *21-22.  The fact that TECO terminated an employee with a disability does not mean that it did so on the basis of her disability.  Oliver has not shown that TECO's employment decisions were motivated by a discriminatory animus toward Oliver based on her disability. For this reason, and because she failed to demonstrate that she is a qualified individual with a disability, her prima facie case is incomplete.

### C.   <u>TECO's Legitimate and Non-Discriminatory Reasons</u>

Assuming arguendo that Oliver succeeded in establishing a prima facie case of disability discrimination, her ADA and FCRA claims would still succumb to TECO's Motion for Summary Judgment because TECO has proffered legitimate, non-discriminatory reasons for (1) referring Oliver to its Employee Assistance Program and (2) terminating Oliver's employment, and Oliver has failed to show that TECO's actions were a pretext for discrimination. See <u>Olmsted v. Taco Bell Corp.</u>, 141 F.3d 1457, 1460 (11th Cir. 1998).  In order to show

24

pretext, Oliver "must demonstrate that the proffered reason was not the true reason for the employment decision." <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005). "In evaluating a summary judgment motion, the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Id.</u> However, "a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993)(internal citation and emphasis omitted).

### 1.   <u>Referral to EAP</u>

As outlined in great detail above, TECO required Oliver to participate in its Employee Assistance Program after TECO determined that Oliver exhibited bizarre, inappropriate, unprofessional, and threatening behavior.  Oliver claims in her deposition that Bernal really did kick and harass her. (Oliver Dep. Vol. 2 Doc. # 26 at 59).  In response to TECO's Motion for Summary Judgment, Oliver maintains that "because the Court must construe these facts in a light most favorable

25

to [Oliver], it must reject Defendant's conclusion that Plaintiff's allegations regarding Bernal were unfounded." (Doc. # 40 at 5). Oliver also suggests that summary judgment is inappropriate because the Court is called to make a credibility determination between Oliver's statements that Bernal did kick her, and Findley's declaration statement that Oliver's accusations about Bernal were untrue. (Id.). Even assuming that Bernal kicked and harassed Oliver on a daily basis, the record shows that decisions makers at TECO believed that Bernal did not kick or otherwise harass Oliver. The record shows that TECO's decision makers determined that Oliver's behavior concerning Bernal was inappropriate and threatening. Oliver has not pointed to any evidence to show that TECO's managers' or other decision makers' beliefs regarding the allegations against Oliver were not honestly held. So long as TECO's decision makers believed that Oliver engaged in the conduct she was alleged to have engaged in, the individuals providing reports about Oliver, such as Guthrie, could have been "lying through their teeth." Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991); see also Hawkins v. Ceco Corp., 883 F.2d 977, 980 n.2 (11th Cir. 1989)(That the employee did not in fact engage in misconduct reported to the employer is irrelevant.). Oliver has failed

to show that TECO's legitimate and non-discriminatory reasons for referring her to its Employer Assistance Program were a mere pretext for unlawful discrimination.

## 2.   Termination

As for her termination, Oliver has provided statements from former coworkers praising Oliver's skills and professionalism. (Doc. # 41).   These statements, both made after Oliver's termination, do not satisfy Oliver's burden to show pretext.   The Court emphasizes that it is the employer's opinion of the terminated employee, and not that of her cohorts, that matters.

Oliver also attempts to show pretext with her argument that she did not act with subordination because she did not know that she was required to attend the June 22, 2010, meet and greet.   However, the Court need not consider this argument.   A termination based on a good faith belief of misconduct is legitimate, even if it is later determined that no misconduct occurred.   EEOC v. Total Sys. Serv., 221 F.3d 1171, 1176-77 (11th Cir. 2000)("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").   "The inquiry . . . is limited to whether [TECO] believed that [Oliver] was guilty of [misconduct], and if so,

27

whether this belief was the reason behind [Oliver's] discharge." Elrod, 939 F.2d at 1470. The record shows that TECO's decision makers were operating under the belief that her absence from the meeting was unauthorized, and Oliver has not pointed to any contrary evidence regarding the decision maker's beliefs. Further, as stated by the court in Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1341 (11th Cir. 2000), "it is not the court's role to second-guess the wisdom of an employer's decision." And this Court does "not sit as a super-personnel department that reexamines an entity's business decisions." Elrod, 939 F.2d at 1470.

The Court grants summary judgment in favor of TECO on Oliver's ADA and FCRA disability discrimination claims asserted in Counts I and III because Oliver has failed to establish a prima facie case - specifically she failed to establish that she is an "otherwise qualified" individual and she failed to show that she was discriminated against on the basis of having a disability. In addition, the Court finds that, had Oliver established a prima facie case of ADA and FCRA discrimination, TECO nevertheless prevails because it proffered legitimate and non-discriminatory reasons for referring Oliver to the Employee Assistance Program and

terminating Oliver, and Oliver has failed to demonstrate pretext.

## V.   <u>Retaliation</u>

Oliver's Complaint also contains two counts against TECO for retaliation under the ADA and the FCRA.  It appears that Oliver has abandoned those claims because Oliver does not mention or otherwise support her retaliation claims in her Response to TECO's Motion for Summary Judgment.  Tellingly, Oliver remarks: "Plaintiff can defeat summary judgment on Defendant's argument regarding her disability discrimination claims in Counts I and III of the Complaint." (Doc. # 40 at 2).  This appears to be a concession that Oliver's retaliation claims asserted in Counts II and IV are subject to summary judgment. "Courts commonly grant summary judgment as to claims which the plaintiff failed to address in response to a summary judgment motion." <u>Barnes v. Crowne Inv., Inc.</u>, 391 F. Supp. 2d 1108, 1114 (S.D. Ala. 2005).

Nevertheless, and in an abundance of caution, the Court addresses the retaliation claims herein.  To establish retaliation under the ADA and the FCRA, Oliver must show: "(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action."

29

<u>Wilbourne v. Forsyth Cnty. Sch. Dist.</u>, 306 F. App'x 473, 476 (11th Cir. 2009). "Once a plaintiff has established a prima facie case [of retaliation], the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001). If this is accomplished, Oliver "bears the ultimate burden of proving by a preponderance of the evidence the reason provided by [TECO] is a pretext for prohibited, retaliatory conduct." <u>Wilbourne</u>, 306 F. App'x at 476.

Oliver engaged in protected activity when she filed a Charge of Discrimination on November 13, 2009.  After the passage of five months, on April 30, 2010, Oliver was placed on "Decision Making Leave."  More than eight months after filing her November 13, 2009, Charge of Discrimination, she was terminated on July 29, 2010. In <u>Drago v. Jenne</u>, 453 F.3d 1301, 1308 (11th Cir. 2006), the court noted: "in the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation."  In the present case, Oliver has not pointed to any evidence of causation, and the proximity between her

protected activity and the adverse employment decisions is too attenuated to give rise to an inference of retaliation.

In addition, as with Oliver's disability discrimination claims, Oliver's retaliation cannot withstand TECO's Motion for Summary Judgment because TECO articulated legitimate and non-retaliatory reasons for its actions, and Oliver failed to demonstrate pretext.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant TECO Energy, Inc.'s Motion for Summary Judgment (Doc. # 24) is **GRANTED.**

(2)   The Clerk is directed to enter Judgment in favor of Defendant and thereafter to **CLOSE THE CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>26th</u> day of December, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record